IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CRESONDRA VALENTINE, :

    Plaintiff, :

                                                                          Case No. 3:11cv00250

vs. :

                                                                          District Judge Thomas M. Rose

MICHAEL J. ASTRUE, : Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration, :

    Defendant. :

## REPORT AND RECOMMENDATIONS[1]

### I.    INTRODUCTION

Plaintiff Cresondra Valentine brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Plaintiff protectively filed[2] her SSI and DIB applications on July 28, 2006, asserting that she has been under a "disability" since August 17, 2000. (*PageID##* 143-45, 146-50). Plaintiff claims to be disabled by depression, a back injury, and anxiety. (*See PageID#* 179).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] A protective filing date is the date a claimant first contacted the Social Security Administration about filing for disability benefits. It may be used to establish an earlier application date than when the Social Security Administration received the claimant's signed application. *See* http://www.ssa.gov/glossary.

After various administrative proceedings, Administrative Law Judge (ALJ) Janice M. Bruning denied Plaintiff's applications based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 44-52). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. This Court has jurisdiction to review the administrative denial of her applications. *See* 42 U.S.C. §§405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #17), the administrative record (Doc. # 9), and the record as a whole.

## II. BACKGROUND

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff was 31 years old on her alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§404.1563(c); 416.963(c)[3]; *see also PageID#* 174. Plaintiff testified at the administrative hearing that she had not completed high school and had not obtained a GED, with her highest level of education being the eleventh grade. (*PageID##* 62-63). She has past relevant employment as an assembler. (*PageID#* 181).

---

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

Plaintiff testified that, prior to the hearing, she had not recently seen a psychologist or mental health specialist (*PageID#* 66), but she acknowledged she sometimes had feelings of low self-esteem. (*Id.*). Plaintiff further indicated that she had difficulty concentrating, thinking, and focusing, and suffers from memory loss. (*Id.*). Plaintiff testified that she was taking medications for her depression and anxiety (*id.*); was paranoid and delusional sometimes, thinking "that somebody might be behind (her) or following (her)" (*PageID#* 67); had crying spells approximately four or five times a week (*id.*); and had been hospitalized once in the last two years due to her depression and anxiety symptoms. (*Id*). Plaintiff indicated she drank alcohol two weeks prior to the hearing, and testified she had not "ever" had treatment for alcohol or drug abuse. (*Id.*).

Plaintiff reported that she was unable to sleep through the night due to having nightmares and night sweats. (*PageID#* 70). Plaintiff testified that she "sometime(s)" had difficulty with personal care and there were some days when she did not take a shower. (*Id.*). Plaintiff also testified that she did not socialize with family or friends, talk on the phone, attend church, go out to eat, or attend recreational events. (*PageID##* 71-72).

Plaintiff explained that she felt she cannot work because she was choked on her job in August 2000 and "slung and put into a machine at work." (*PageID#* 73). She testified that every time she attempts to socialize or engage with people she "just can't do it." (*Id.*). She further testified that her back goes out and then she is so stressed that her

3

stomach "knots", which leads to an anxiety/panic attack. (*Id.*). She again noted that she felt somebody was following or watching her, and doing things to her. (*Id.*).

## B. Medical Opinions

### Mary Ann Jones, Ph.D.

In October 2006, Plaintiff was evaluated by Mary Ann Jones, Ph.D., at the request of the Ohio Bureau of Disability Determination (BDD). (*PageID##* 389-94). Plaintiff presented experiencing symptoms consistent with the diagnosis of major depression recurrent (possibly with psychotic features) and a generalized anxiety disorder. (*PageID#* 392). Plaintiff reported that the reason she was unable to work was because of her constant pain and tendency to be paranoid about her coworkers. She has had several jobs from which she was fired because of her inability to get along with others and tendency to respond intemperately when minimally provoked. She indicated that she experienced anxiety attacks and mood swings.

During the mental status examination, Plaintiff was very agitated and was unable to be still for much of the interview. She cried throughout and described significant difficulties interacting appropriately with others. Plaintiff described a fairly minimal activity level and noted that her children are responsible for the basic household chores. She reported that she managed her own money, watched television, and interacted with neighbors. She presented with marginal information, judgment, and common sense regarding her ability to live independently, make important decisions concerning her future, and to manage her own funds.

Dr. Jones diagnosed Plaintiff with depression, recurrent (with possible psychotic features), generalized anxiety, and alcohol abuse in remission. Dr. Jones opined that Plaintiff's mental ability to relate to others, including fellow workers and supervisors, is moderately impaired. She found that Plaintiff would not be able "to relate sufficiently to coworkers and supervisors on any sustained basis (two or more hours at a time)." (*PageID#* 393). Dr. Jones also found that Plaintiff was apparently able to relate adequately to her family and to store clerks with her activities of daily living in order to complete basic household chores and childcare activities. (*Id.*). Dr. Jones also concluded that because of social withdrawal, Plaintiff did "not appear appropriate for jobs requiring sustained public interaction." (*PageID#* 394).

Dr. Jones also opined that Plaintiff was moderately impaired in regards to her ability to understand, remember, and follow instructions. Dr. Jones opined that Plaintiff was "capable of comprehending and completing simple, routine ADL [activities of daily living] tasks at home and in the community." (*PageID#* 394). Plaintiff was found to be mildly impaired as to her ability to maintain attention, concentration and persistence to perform routine tasks, and moderately impaired in connection with her ability to withstand the stress and pressures associated with day to day work activity. (*Id.*).

**Vinod K. Patwa, M.D.**

On May 18, 2007, Plaintiff was evaluated by psychiatrist, Vinod K. Patwa, M.D., on referral from her family physician. (*PageID##* 473-76). After examining Plaintiff, Dr. Patwa diagnosed her with bipolar affective disorder- nonspecific, panic disorder, and

5

prolonged post traumatic stress disorder (PTSD). (*PageID#* 475). Dr. Patwa noted that Plaintiff had somatic manifestations of panic attacks and multiple phobias, her memory did not seem to reveal any gross deficit in recent or remote events, and her judgment and insight were intact. Dr. Patwa changed Plaintiff's medication, she was advised to engage in psychotherapy and to refrain completely from alcohol and/or drugs, or "none of this treatment is going to be of any benefit to her." (*Id.*).

**Alice Chambly, Psy.D.**

Dr. Chambly reviewed the record and completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form on November 6, 2006 on behalf of the Ohio BDD. (*PageID##* 395-412). She indicated that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration. (*PageID#* 409). She further determined that the evidence did not establish the presence of the "C" criteria in Listing § 12.02 (Organic Mental Disorders), § 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), or § 12.04 (Affective Disorders). *See PageID#* 410; *see also* 20 C.F.R. Pt. 404, Subpt. P, App.1, §§ 12.02-.04. Dr. Chambly opined that Plaintiff "is likely still abusing substances" and "retain[ed] the ability to complete a range of simple, routine tasks requiring only superficial contact with others." (*PageID#* 397).

**C.** **Vocational Expert Testimony**

In addition to Plaintiff, a vocational expert (VE), Lee O. Knutson, testified at the administrative hearing. He classified Plaintiff's past work as a cashier, housekeeper, fast food worker, telemarketer, waitress, and mail sorter – but noted "all this was very brief." (*PageID#* 76). He testified that Plaintiff's only past relevant work experience was her work as an assembler at Daimler Chrysler in 2000, which the VE testified was medium and unskilled. (*Id.*).

He was asked to assume that Plaintiff could work at the medium exertional level "but she's not to come in contact with the public for work related purposes, only occasional contact with coworkers and supervisors and is limited to unskilled, four-step tasks that are simple and repetitive." (*Id.*). With those restrictions, the VE testified that Plaintiff could perform her previous job as an assembler at Chrysler. (*Id.*).

The VE also testified that Plaintiff could perform the requirements of other unskilled medium work, such as assembler (38,700 jobs), inspector/checker/weigher (3,100 jobs), and hand packer (16,000 jobs); unskilled light work such as assembler (45,000 jobs), inspector/checker/weigher (13,000 jobs), and hand packer (21,000 jobs); and unskilled sedentary occupations such as bench assembler (5,500 jobs), inspector/checker/weigher (4,600 jobs), and hand packer (2,700 jobs). (*PageID##* 76-78).

## III. ADMINISTRATIVE REVIEW

### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the

7

definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. ALJ Bruning's Decision

ALJ Bruning resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations.  *See PageID##* 45-46; *see also* 20 C.F.R. § 404.1520(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments:  bipolar disorder, somatoform disorder and alcohol dependence disorder.  (*PageID#* 46).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (*PageID#* 47).

8

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: no public contact and occasional contact with coworkers and supervisors. (*PageID#* 48).

The ALJ concluded at Step 4 that Plaintiff is capable of performing her past relevant work as an assembler. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. (*PageID#* 51).

At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. (*PageID##* 51-52).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (*PageID#* 52).

## IV. <u>JUDICIAL REVIEW</u>

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. DISCUSSION

### A. Plaintiff's Contentions

Plaintiff does not challenge the ALJ's evaluation of the medical evidence or her assessment of Plaintiff's RFC. (Doc. # 11, *PageID##* 754-58). Rather, Plaintiff challenges the ALJ's evaluation of the vocational evidence. Plaintiff contends that the ALJ erroneously determined at Step 4 that Plaintiff could perform her past work.

Plaintiff argues "there is nothing in the record to suggest that Plaintiff can locate a job as an assembler in which she has no contact with the public and only occasional contact with her co-workers and supervisors." (*PageID# 757*).

Plaintiff also argues that the ALJ did not meet her burden to prove that Plaintiff could perform other work. Plaintiff argues "there is no testimony in the record to suggest that an actual job exists that Plaintiff could perform given her lack of education, lack of training and mental limitations." (*Id.*). Plaintiff contends that "[i]n the absence of such evidence and in the absence of evidence that would support a finding that Plaintiff could perform the essential functions of the job with her aforementioned limitations, the Commissioner has clearly failed to meet his aforementioned burden." (*PageID# 758*).

**B.   Analysis**

**1.**

Plaintiff argues the ALJ erred at Step 4 when she determined that she could perform her past position as an assembler, provided that she has no contact with the public and only occasional contact with coworkers and supervisors. (Doc. #11, *PageID# 756*). Plaintiff contends she "cannot function in any setting that requires her to have any contact with co-workers or authority figures," and "there is **no** evidence, not even a scintilla, to suggest that there is an assembly line position anywhere in the Country on which Plaintiff could work given her conditions." (*Id.*) (emphasis in original). Plaintiff does not, however, challenge the ALJ's evaluation of the medical evidence or her assessment of Plaintiff's RFC. (*PageID## 754-58*).

An ALJ makes a residual functional capacity determination in deciding whether a claimant is disabled. The RFC finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account. 20 C.F.R. § 404.1545. It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].'" *Varley v. Secretary of Health & Human Servs.,* 820 F .2d 777, 779 (6th Cir. 1987); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir.1975) (per curiam); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

When a vocational expert testifies, the ALJ asks the expert to assume certain facts about the claimant's work abilities. The facts in this hypothetical are the ALJ's residual functional capacity findings. The ALJ must accurately state each limitation that affects the claimant's ability to work. If there is not substantial evidence supporting the limitations the ALJ includes in the hypothetical to the vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits. *Howard*, 276 F.3d at 240-42. If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is error for the ALJ to omit this limitation from the hypothetical given. *Id.* at 242.

Here, the ALJ concluded that Plaintiff had mild restrictions in activities of daily living; and moderate difficulties with regard to social functioning and concentration, persistence or pace. (*PageID##* 47-48). The ALJ found that Plaintiff would be limited to no public contact and occasional contact with coworkers and supervisors. (*PageID#* 48).

The ALJ based her determination of Plaintiff's RFC on the opinions of Dr. Jones and Dr. Chambly. (*PageID##* 49-50).

There is no apparent error in the ALJ's evaluation of the medical evidence. The medical evidence Plaintiff submitted took the form of treatment notes, forms, and similar records rather than actual opinions of her treating physicians or psychiatrist regarding her condition. (*See PageID##* 261-386, 430-749). In the absence of any treating physician/psychiatrist opinions, the ALJ was justified in relying heavily on the consultative examination performed by Dr. Jones and the file review performed by Dr. Chambly, who offered the only actual "opinions" appearing in the record. (*PageID##* 389-94, 395-412). *See Wilson*, 378 F.3d at 544; *see also Peebles v. Chater*, 85 F.3d 629 [table], 1996 WL 229528 (6th Cir. May 6, 1996) ["in the absence of any evidence from treating physicians . . . the ALJ was required to rely on the reports of the consulting physician."].

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the administrative law judge when cases are decided at an administrative hearing. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted); 20 C.F.R. §§ 404.1546, 404.1527(e)(2). However, the RFC assessment of the ALJ is supported by the "claimant's medical record as a whole, consideration of the factors presented at 20 CFR §§ 404.l529(c)(3) and 416.929(c)(3) and Social Security Ruling 96-7p, and of the claimant's testimony." (*PageID##* 50-51).

In her hypothetical posed to the VE, the ALJ asked him to consider an

13

individual who is "not to come in contact with the public for work related purposes, only occasional contact with coworkers and supervisors and is limited to unskilled, four-step tasks that are simple and repetitive." (*PageID#* 76). Plaintiff maintains that there is nothing in the record to suggest that Plaintiff can locate a job as assembler in which she has no contact with the public and only occasional contact with her coworkers and supervisors. (Doc. # 11, *PageID#* 757). Plaintiff adds, "[w]orking on an assembly line by its very nature calls for regular and consistent interaction with other employees on the line and the line supervisor." (*Id.*). Plaintiff contends "[p]erhaps most importantly, there is no evidence that Plaintiff can function in a situation that she is required to have 'occasional' contact with her co-workers and supervisors." (*Id.*). However, Plaintiff has not offered any evidence to show that she could not function in such a situation, or that the V.E. was incorrect regarding the availability of assembler positions with the limitations set forth above. Plaintiff has not met her burden of showing that she is no longer able to perform the type of work she had done in the past. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n.5 (1987). Furthermore, there are no medical opinions to confirm her contention, and it is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue,* 266 F. App'x at 451, 461 (6th Cir 2008); *Myatt v. Comm'r of Soc. Sec.,* 251 Fed. Appx. 332, 336 (6th Cir. 2007). The VE does not determine a claimant's medical restrictions or how they

impact on the claimant's residual functional capacity – that is the ALJ's job as noted above.

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff could perform her past work as an assembler. The ALJ did not err at Step 4.

**2.**

The ALJ correctly determined Plaintiff is capable of performing her past work as an assembler, and therefore could have determined at Step 4 Plaintiff was not disabled and ended her decision at that point. Nonetheless, the ALJ alternatively found there were other jobs available for Plaintiff in the national economy, considering Plaintiff's age, education, work experience and residual functional capacity. (Doc. #9-2, *PageID#* 51). Plaintiff asserts that the ALJ's Step 5 finding is without substantial evidentiary support in the record. Plaintiff contends there is no testimony in the record to suggest that an actual job exists that Plaintiff could perform given her lack of education, lack of training, and mental limitations. (Doc. # 11, *PageID#* 757). Although the Court need not reach this issue because the ALJ's finding that Plaintiff could still perform her past work is supported by substantial evidence, the Court nonetheless notes, as discussed below, the ALJ's finding at Step 5 that other jobs were available for Plaintiff is also supported by substantial evidence.

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational

15

profile." *Jones v. Comm'r v. Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through reliance on a vocational expert's testimony in response to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's physical and mental limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *see also Howard*, 276 F.3d at 241; *Varley*, 820 F.2d at 779.

The ALJ based her decision at Step 5 in part on the opinions of the VE, who testified that 149,600 medium, light and sedentary jobs were available in the regional and national economies for a person with Plaintiff's limitations. (*PageID##* 76-78). The fact that the Step 5 jobs identified by the VE may also have some occasional interaction with coworkers and supervisors, does not necessarily imply a requirement in excess of Plaintiff's ability. The vocational expert was competent to testify that a number of positions exist that Plaintiff could perform, and there is nothing in the record that would have caused the ALJ to question the accuracy of, or foundation for, that testimony. The question is whether a reasonable person could have concluded, based on this record, that the VE's testimony was worthy of belief. The Court finds substantial basis for the ALJ's decision on this issue.

Accordingly, for all the above reasons, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's final non-disability determination be affirmed; and,

2. The case be terminated on the docket of this Court.

July 18, 2012

                 s/Sharon L. Ovington
                  Sharon L. Ovington
               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).